IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRI LINK, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 2:15-cv-00643-RCM |
| | : | |
| ARS NATIONAL SERVICES, INC., | : | |
|     Defendant | : | JURY TRIAL DEMANDED |

**DEFENDANT ARS NATIONAL SERVICES, INC.'S
OBJECTIONS TO MAGISTRATE JUDGE ROBERT MITCHELL'S
REPORT AND RECOMMENDATION**

Magistrate Judge Robert Mitchell's Report and Recommendation dated November 2, 2015, concluded that placing a barcode on a collection envelope violated 15 U.S.C. §1692, *et al.* (hereinafter the "FDCPA") and subsequently denied ARS National Services, Inc.'s (hereinafter "Defendant" or "ARSN") Motion for Judgment on the Pleadings.  ARSN respectfully submits that Judge Mitchell erred in this conclusion.

Specifically, ARSN takes issue with Judge Mitchell's finding that "there is no difference between including an account number on the face of an envelope or embedding said account number in a barcode."  (Doc. 19 at pg. 9).  Judge Mitchell's Report and Recommendation failed to explain how a series of black and white lines, of differing heights, separated by white space and without Arabic numerals apparent on their face, are capable of identifying the recipient of the letter as a debtor – as opposed to the millions of other activities barcodes are used for, such as on the outside of magazine subscriptions and packages.



vs.

{01033558;v1}1

123456789

Additionally, Judge Mitchell also erred when he found that the Third Circuit's holding in *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014), which held that an actual account number visible on the outside of an envelope was capable of identifying the recipient as a debtor, was binding on this Court with respect to a bar code.  The Third Circuit specifically and clearly refused to extend *Douglass'* holding to barcodes, and thus left it to the District Courts to analyze the unique characteristics of barcodes under the FDCPA.  Finally, Judge Mitchell adopted a "potential to cause harm" standard that not only was never adopted by the Third Circuit, but contradicts the intent of the FDCPA.

## LEGAL ARGUMENT

I.  **STANDARD OF REVIEW**

Pursuant to 15 U.S.C. § 636(b)(1) and Western District of Pennsylvania Local Rule 72, "a district court may designate a magistrate judge to consider a motion for summary judgment [or motion for judgment on the pleadings] and to submit a recommendation regarding the disposition of the motion."  *Scott v. Lackey*, Civil Action No. 1:02-1586, 2010 U.S. Dist. LEXIS 4350, **14 – 15 (M.D. Pa. Jan. 20, 2010).  "[T]he district court applies a *de novo* review to the issues raised on objection . . . and may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge."  *Clemson v. Colvin*, Civil Action No. 2015 U.S. Dist. LEXIS 65659, *2 (E.D. Pa. May 19, 2015) (*citing United States v. Raddatz*, 447 U.S. 667 (1980)).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Spruill v.*

*Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  In considering a motion for judgment on the pleadings, "the court may consider the well-pleaded facts in the complaint, and may also consider the answer and written instruments attached to the pleadings." *Churchill v. Star Enters.*, 3 F. Supp.2d 625, 626 (E.D. Pa. 1998); *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004).

A judgment on the pleadings will be granted where "'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted).  A court will view the facts, and "draw all inferences in the light most favorable to the non-moving party."  *Id.*  Under Rule 12(b)(6), the complaint must allege "'enough facts to state a claim for relief that is plausible on its face.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under Rule 12(b)(6), "[a] court need not, however, credit 'bald assertions' or 'legal conclusions,' nor should it accept 'unwarranted inferences' when deciding a motion to dismiss." *Marks v. Struble*, 347 F. Supp. 2d 136, 143 (D.N.J. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  The Court must grant a motion for dismissal when there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint, there is an insurmountable bar to relief indicating that the plaintiff does not have a claim.  *Marks*, 347 F. Supp. 2d at 143.

## II.     OBJECTIONS

### A.     Judge Mitchell Erred When Finding that There Is No Difference Between a Barcode and an Actual Account Number.

Judge Mitchell erred by concluding that the barcode on the outside of the collection notice mailed to Plaintiff was no different than the actual account number at issue in *Douglass*.

(*See* Doc. 19 at pg. 9).  Like any other barcode, the barcode at issue in this case is a meaningless set of black and white marks that – without the proper scanning equipment – cannot convey any information, let alone information regarding the contents of the notice. There is nothing about the barcode that discloses the purpose of the enclosed letter or that could distinguish it from any other piece of junk mail that displays a barcode through the glassine window of an envelope.\[1]
*See Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 319 (8th Cir. 2004).



vs.

123456789

---

[1] /    Unlike actual Arabic numerals, which can be **read and comprehended** by an individual merely by glancing at the number itself (assuming one has the capacity to read), a barcode cannot be read and comprehended without considerable effort to utilize third party hardware and software to actively obtain the information stored in the barcode.  The type of conduct needed to take such action is no different than ripping open the envelope and reading the letter, which also contains an account number within its text.  "Once [a letter] is placed in the U.S. Mail, the collection letter may not be 'scanned' with impunity," further protecting the information stored in the barcode. *Waldron v. Prof'l Med. Mgmt.*, Civil Action No. 12-1863, 2013 U.S. Dist. LEXIS 34402, *10 (E.D. Pa. 2013). Federal law prohibits individuals from taking another's mail with the specific intent to obstruct correspondence or pry into the business or secret of another, 18 U.S.C. §1702, which extends to actions such as scanning a barcode on another person's mail.  This protection continues until the time the mail is delivered to the addressee (not just to his mailbox) or his authorized agent.  *Id.*  Moreover, U.S. postal workers are allowed to "exhibit mail to the addressees only," eliminating the possibility of a private individual legally intercepting an envelope and scanning a barcode. *United States Postal Service, Handbook M-41: City Delivery Carriers Duties and Responsibilities* 131.34 (2001). Thus, a private citizen cannot legally scan a barcode on the exterior of an envelope, much less legally access the information stored in the barcode.

U.S. postal workers are also prohibited from taking any actions which would allow them to legally view the information stored in the barcode.  Only U.S. postal workers are allowed to handle the mail, and even then, federal law prohibits those employees from tampering with the mail.  18 U.S.C. §1703.  Mail tampering includes detaining, destroying, delaying, or opening any letter or other mail.  *Id.*  Postal workers are also prohibited from searching, inspecting, reading, or disclosing information obtained from the mail or its contents.  *United States Postal Service, Administrative Support Manual* 274.21 (2005).  Postal workers who tamper with the mail or violate these postal regulations are subject to administrative discipline or criminal prosecution.  *Burrell v. Runyon*, No. 95-253, 1996 U.S. Dist. LEXIS 8656, #2 (S.D. Ala. June 7, 1996).  Mail is also protected from search by postal workers under the Fourth Amendment.  *See United States Postal Service, Administrative Support Manual* 274.41.  Courts have thus ruled that an x-ray scan of mail constitutes a Fourth Amendment search.  *See United States v. Napan*, 769 F. Supp. 2d 969, 971 (E.D. Va. 2011).

In contrast, the Third Circuit held in *Douglass* that it was the account number itself – a string of random numbers placed in a particular order – that had the ability to identify the plaintiff as a debtor. *See Douglass*, 765 F.3d at 305 – 306. Unlike a barcode, which does not release any information until a third party takes the additional step of scanning it with a barcode reading device, it is the account number that implicates the FDCPA. No second step is required.

As explained by the Third Circuit, "The account number is a core piece of information pertaining to [the recipients] status as a debtor and [the collection agency's] debt collection effort." *Id.* at 303. It is beyond argument that the barcode itself is not a "core piece of information." Even if we take the allegations in Plaintiff's Complaint as true, and assume that Plaintiff's account number is embedded in the barcode, the character of the barcode is unchanged. The account number is simply not visible on the envelope.

Judge Mitchell gets around this fundamental difference by explaining that the barcode, when scanned, reveals account information similar to the account number at issue in *Douglass*. (Doc. 19 at pg. 9). This explanation, however, completely glosses over the fact that the barcode itself does not disclose any information. This is a critical piece to the analysis. Section 1692f of the FDCPA specifically proscribes debt collectors from using "unfair or unconscionable means to collect a debt." 15 U.S.C. § 1692f. In listing a non-exhaustive list of activities that would fall within the statute, the FDCPA does not permit debt collectors from "using any language or symbol, other than the debt collector's address, on any envelope . . ." 15 U.S.C. § 1692f(8). The Third Circuit recognized in *Douglass* that the purpose of § 1692(f) is to not only proscribe debt collector's from using harassing and embarrassing language, but to also protect consumers' identifying information. *See Douglass*, 765 F.3d at 306.

Yet, the statute cannot provide the type of absolute protection to the consumer Judge Mitchell seems to believe the FDCPA conveys while still allowing any collection agency to use the mails to send collection notices. For instance, "the return address printed on the envelope – text that is expressly allowed by § 1692f(8) – is equally capable of identifying the recipient as a debtor." *Gardner v. Credit Management LP*, Civil Action No. 14-9414, 2015 U.S. Dist. LEXIS 144128, at *12 (S.D.N.Y. October 23, 2015). All a sufficiently interested party would need to do is search the return address in an internet search engine and the name of the debt collector appears. *Id.* "If the Act were concerned with the display of information that *could*, if diligently investigated, disclose a recipient's debtor status, it would not permit return addresses . . . at all. *Id.* Taking this argument a step further, the notice inside the letter is equally capable of identifying the recipient as a debtor. All a third party would have to do is open the envelope and read the contents of the collection notice. *Id.* The Report and Recommendation did not provide a single reason why the FDCPA should be read to hold debt collectors liable for certain improper acts of third parties but not for others.

The purpose of the act is not to stop third parties, if so inclined and motivated, from discovering that the recipient owes an overdue account which has been placed in collections. Instead, as other courts have found, "Congress enacted §1692f(8) simply to prevent debt collectors from "using symbols on envelopes indicating that the contents ***pertain to debt collection***." *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 319 (8th Cir. 2004) (quoting *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1466 (C.D. Cal. 1991) (emphasis in original)); *see also Lindbergh v. Transworld Sys., Inc.*, 846 F.Supp. 175, 180 (D. Conn. 1994). It is words or symbols that on their face indicate a debt collection purpose or disclose the recipient's status as a debtor that implicate the FDCPA. *see Goswami v. Am.*

*Collections Enter., Inc.*, 377 F.3d 488, 494 (5th Cir. 2004) (rejecting a claim under § 1692f(8) based on language, "priority letter," on the envelope because § 1692f(8) "only prohibits markings on the outside of envelopes that are unfair or unconscionable, such as markings that would signal that it is a debt collection letter and tend to humiliate, threaten, or manipulate debtors."); *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1466 (C.D. Cal. 1991) (finding that "(1) notice that theft of mail or obstruction of delivery is a federal crime, (2) the language 'PERSONAL & CONFIDENTIAL' and (3) the phrase 'Forwarding and Address Correction Requested' on the outside of an envelope was not an FDCPA violation); *Johnson v. NCB Collection Servs.*, 799 F.Supp. 1298, 1304-05 (D.Conn. 1992) (finding that the phrase "Revenue Department" on the outside of an envelope was not an FDCPA violation); *Lindbergh*, 846 F.Supp. at 180 (finding that the word "TRANSMITTAL" on the outside of an envelope was not an FDCPA violation).

      Based on this reasoning, the Federal Trade Commission has interpreted 15 U.S.C. § 1692f(8) to permit the presence of "harmless words or symbols" on envelopes.  FTC Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097-02, 50,108 (Dec. 13, 1988).  The FDCPA is therefore concerned with the information *itself* that is included on the collection envelope – not what third parties could learn if investigated.  After all, the statute makes a distinction between debt collector names that on their face indicate a collection purpose, and those that do not.  *See* 15 U.S.C. § 1692f(8) (" . . . except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.").  Why make this distinction at all if the FDCPA was concerned with what third parties could learn it they researched the business name versus what is apparent to the viewer by the naked eye?

In the present case, the barcode, on its face, reveals absolutely no information. In this respect it is like the return address or the business name of the debt collector that does not reveal that the sender is in the debt collection business. It is only after the barcode is scanned that the recipient's account number is revealed. On the other hand, the account number – according to the Third Circuit – is identifying information. Thus, the fact that the barcode hides the account number and embeds it in a barcode makes it substantially different than the account number in *Douglass*. Since the FDCPA was not meant to preclude information that could, if diligently investigated, disclose sensitive information, Judge Mitchell erred when he determined that the barcode is exactly the same as the account number.

**B.     Judge Mitchell Erred by Finding that *Douglass*'s Holding Was Binding On The Court.**

The Report and Recommendation also relied on the erroneous proposition that the *Douglass* opinion was binding on this case. It is beyond dispute that the Third Circuit held in *Douglass* that an account number on the outside of an envelope violated the FDCPA. *Douglass*, at 306. What does appear to have created some confusion, however, is the Third Circuit's reasoning for finding a violation of the FDCPA. The Third Circuit extended § 1692f to not just preclude harassing and embarrassing language, but to also protect consumers identifying information from disclosure. *Id.* Based on this interpretation of the statute, the Court of Appeals held that the account number – without the need for any additional investigation – was "a core piece of information relating to [Plaintiff's] status as a debtor" and "implicate[d] a core concern animating the FDCPA—the invasion of privacy." This was an incredibly narrow holding that applied only to the debtor's account number.

*Douglass*'s holding, however, only addressed whether an account number violated the FDCPA. The Third Circuit never addressed whether a barcode also violated the FDCPA. In

fact, *Douglass* affirmatively declined to address the issue, and refused to consider whether the QR code on the plaintiff's collection letter should be held to the same standard as the account number. *Douglass*, 765 F.3d at 301, n. 4 ("Douglass no longer presses her argument that Convergent violated the FDCPA by including the QR Code on the envelope . . . We therefore do not decide that issue."). Tellingly, *Douglass* refused to overrule the Eastern District case of *Waldron v. Professional Medical Management*, 2013 U.S. Dist. LEXIS 34402 (E.D. Pa. 2013), which held that the presence of a barcode did not violate the FDCPA . *Id.* ("[T]he embedded data is a seemingly random series of letters and numbers that only [the debt collector] can decipher."). *Waldron* is still good law.

By refusing to overrule *Waldron*, the Third Circuit left open the possibility that even in a *Douglass* jurisdiction, district courts could find that barcodes do not violate the FDCPA. This distinction is important because *Douglass* never discussed whether a barcode implicates the same type of privacy concerns that the Third Circuit talked about in terms of an account number.

The barcode at issue in this case provides absolutely no information when viewed without a device specially equipped to read the type of barcode used on the envelope. While it is true that a third party could scan the barcode, as explained above, the FDCPA was not intended to prohibit markings that could, if reasonably investigated, disclose the purpose of the notice. If that was the case, the FDCPA would not permit debt collector's to use their return address, their business name, or arguably permit them to mail a letter at all.

Courts in other districts have come to the same conclusion. For example, in *Gonzalez v. FMS, Inc.*, Civil Action No. 14-9424, 2015 U.S. Dist. LEXIS 87660, *17 (N.D. Ill. July 6, 2015), the court held that even if *Douglass* was binding it would not extend to an account number that was embedded into a random string of numbers. *Gonzalez*, 2015 U.S. Dist. LEXIS 87660 at *13

(Holding that a third party "viewing the envelope could not plausibly divine that the letter inside was associated with a delinquent debt."). The court distinguished between words and symbols that on their face disclosed sensitive information, and those that were hidden from view.

Thus, it is inappropriate to apply *Douglass'*s analysis to a barcode. Like *Gonzalez*, it is inconceivable that a bar code – a jumble of thick and thin lines of differing heights, separated by white space, that are incoherent and unintelligible to the naked eye - could possibly be associated with a delinquent debt or constitute an unfair or unconscionable attempt to collect a debt. Without a finding that the barcode *itself* is somehow a core piece of information, the *Douglass* holding is completely inapplicable to the set of facts in this case.

### C. Judge Mitchell Erred by Analyzing the FDCPA Under a Potential to Cause Harm Standard

Judge Mitchell concluded in his Report and Recommendation that under *Douglass*, the test for whether a collection notice violates the FDCPA is whether the disclosed information had the "potential to harm" Plaintiff. (Doc. 19 at pg. 9). According to Judge Mitchell, the Third Circuit developed this standard in *Douglass* when it held that an account number had the potential to cause harm to the plaintiff. This is simply not accurate.

The phrase "potential to cause harm," is only used once in the entire *Douglass* opinion. *Douglass*, 765 F.3d at 306. Even then, the phrase is not used until the second to last paragraph of the opinion, when the Court of Appeals is simply reiterating its conclusions. Had the Third Circuit actually adopted a "potential to cause harm standard" it would have discussed the substance of what that standard is and how it should be applied somewhere in the opinion. Notably, this analysis is missing.

Instead, the *Douglass* court held that the FDCPA protects harassing and embarrassing language *as well as* consumers' financial information. *Douglass,* 765 F.3d at 306. Relying on

this interpretation of the FDCPA, the Appeals Court determined that the account number violated the FDCPA because "it is a piece of information capable of identifying Douglass as a debtor." *Douglass*, 765 F.3d at 306.  Thus, *Douglass* did not find that the account number violated the FDCPA because it had the potential to harm the plaintiff, but rather it violated the FDCPA because it identified the plaintiff as a debtor.  The Third Circuit's holding was not based on the fact that the account number had the potential to cause harm because theoretically a third party could use the account number to learn private information about the Plaintiff.  Rather, it was the account number itself that was private financial information and implicated a core concern of the FDCPA.\[2]

The Third Circuit has never adopted a "potential to cause harm" standard.  As explained above, the holding of *Douglass* was extremely narrow and applied only to those situations where the recipient's account number could be viewed on the outside of the envelope.  The Court did not discuss how the account number could potentially harm Plaintiff because it was the number itself that was harmful.  The Report and Recommendation relies on the faulty "potential to cause harm" standard for concluding that because a third party could potentially scan the barcode to reveal the account number, barcode on the collection notice violates the FDCPA.  This analysis, however, essentially concedes the point ARSN has been trying to make all along - that the barcode, on its own, discloses nothing that could plausibly violate the FDCPA.  It is not the barcode that poses a danger to Plaintiff, but rather the independent acts of third parties.

If the FDCPA did in fact make any marking that could potentially cause harm illegal, any notice sent through the mail could "potentially" injure the recipient.  A third party could theoretically find out who sent the notice by searching the debt collector's return address or

---

[2] / In fact, the Third Circuit was completely content to ignore the fact that an account number, on its own, did not disclose any information unless plugged into the debt collector's internal tracking system.

name on the internet, or by simply opening the notice and reading the contents of the letter. Section 1692f of the FDCPA explicitly allows debt collectors to use their return address, their business name (if it does not disclose a debt collection purpose), and the US mail service to send collection notices.

The question this Court must answer is whether the barcode, on its face, discloses a debt collection purpose or private financial information. The barcode at issue – like all barcodes – is a jumble of thick and thin lines of differing heights, separated by white space, that are incoherent and unintelligible to the naked eye. There is nothing inherent in the barcode that discloses the purpose of the letter or any information about the recipient. While it is true that a third party could scan the barcode, the FDCPA was not intended to extend to language or symbols that could potentially disclose information if diligently investigated by a third party. The analysis for the FDCPA begins and ends at whether the barcode, on its face, discloses any potentially harmful information. Because a barcode, by its very nature, cannot do either one of these things, this Court must find that there has been no violation of the FDCPA.

## CONCLUSION

This Court should reject the Report and Recommendation and grant ARSN's Motion for Judgment on the Pleadings because section 1692f(8) of the FDCPA only precludes language or symbols that identify Plaintiff as a debtor. Since a bar code, when viewed with the naked eye, is nothing more than a meaningless set of black and white lines, incapable of providing any information about Plaintiff or the alleged debt, this Court should find that the collection letter at issue was in full compliance with the FDCPA. Like the *Douglass* decision suggested, this Court should distinguish between information that is embedded and hidden in a barcode, and private financial information that is displayed in full view on the outside of an envelope. Since the Third

Circuit never adopted a potential to cause harm standard, the fact that the barcode, could, if properly scanned, reveal an account number, is entirely irrelevant to whether it violated the FDCPA.

                                Respectfully submitted,

                                FINEMAN KREKSTEIN & HARRIS, P.C.

             By:       /S/ Richard J. Perr
                                RICHARD J. PERR, ESQUIRE (PA 72883)
                                Ten Penn Center
                                1801 Market Street, Suite 1100
                                Philadelphia, PA  19103-1628
                                (v) 215-893-9300; (f) 215-893-8719
                                rperr@finemanlawfirm.com
                                Attorneys for Defendant

Dated: November 17, 2015

## CERTIFICATE OF SERVICE

I, RICHARD J. PERR, ESQUIRE, hereby certify that on or about this date, I served a true and correct copy of the foregoing electronically, or by first class mail, postage prepaid, or telecopy on the following:

>Clayton S. Morrow, Esquire
>Morrow & Artim, P.C.
>Mitchell Building, 7th Floor
>304 Ross Street
>Pittsburgh, PA  15219
>(v) 412-281-1250; (f) 412-386-3184
>clay@pacreditcardlaw.com; cmorrow@allconsumerlaw.com
>    Attorneys for Plaintiff

>      /S/ Richard J. Perr
>    RICHARD J. PERR, ESQUIRE

Dated:  November 17, 2015